UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOHAMID MOHAMED, A042-162-296,

                        Petitioner,

            -v-                                                    13-CV-185-JTC

ERIC H. HOLDER, Attorney General of the
United States;

MICHAEL PHILIPS, Field Office Director for
Detention and Removal, Buffalo Field Office,
Bureau of Immigration and Customs Enforcement;

Department of Homeland Security; and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

                        Respondents.

_____

## INTRODUCTION

        Petitioner Mohamid Mohamed, an alien under a final order of removal from the

United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking release from detention in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), pending the execution of a final immigration order of removal issued against him.

Item 1.  As directed by this court's order entered March 4, 2013 (Item 2), respondent[1] has

_____

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5) in opposition to the petition, and petitioner has submitted a sworn declaration in reply (Item 6).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Guyana, entered the United States at New York, New York on February 10, 1990.  *See* Item 4-1 (Declaration of DHS Deportation Officer Juanita Payan), ¶ 5.  DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

On January 6, 1998, petitioner was convicted in the Queens County, New York Criminal Court, of driving while ability impaired by the consumption of alcohol.  He was granted a conditional discharge, fined $300, and his driver's license was suspended for 90 days.  *Id.* at ¶ 6(a).

On December 20, 2001, petitioner was convicted in the Queens County, New York Criminal Court, for operating a motor vehicle with .10 of 1% alcohol - first offense.  He was granted a conditional discharge, fined $750 and his driver's license was revoked.  *Id* at ¶ 6(b).

On September 7, 2007, petitioner was convicted in the New York State Supreme Court, Kings County, of Operating a Motor Vehicle .08 of 1% alcohol or more – prior conviction designated offense within 10 years.  *Id* at ¶ 6(c).

On October 20, 2008, petitioner was convicted in the Kings County, New York Criminal Court, of attempted criminal contempt in the 2nd degree, in violation of New York

State Penal Law Section 110-215.50.  He was sentenced to 90 days imprisonment and a 5-year order of protection was issued.  Petitioner subsequently filed a motion to vacate the judgment of conviction pursuant to New York State Criminal Procedure Law Section 440.10(h).  *Id* at ¶ 6(d).  This motion was denied by the Criminal Court, Kings County, New York, by a Decision and Order dated February 28, 2013.  *See* Item 4-2 (Exh. A to Payan Decl.), pp. 39-47.

On December 23, 2010, upon his release from the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), petitioner was placed into DHS custody and served with a Notice to Appear ("NTA") for removal proceedings before an immigration judge.  Item 4-1, ¶ 7.  The NTA charged petitioner with being removable from the United States pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(E)(ii), 8 U.S.C. § 1227(a)(2)(E)(ii), as an alien who at any time after entry has been enjoined under a protection order and has been determined to have engaged in conduct in violation of that order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons from whom the protection was issued.  *See* Item 4-2, pp. 25-27.

On January 5, 2011, petitioner was transferred from DHS custody to the custody of NYSDOCCS pursuant to a Writ of Habeas Corpus Ad Prosequendum pending the disposition of several state criminal charges.  Item 4-1, ¶ 8.

On February 10, 2011, petitioner was convicted in the New York State Supreme Court, Queens County, upon verdict after a jury trial, of two counts of criminal mischief in the 3rd degree; assault in the 3rd degree; criminal contempt in the 1st degree; and criminal possession of a weapon in the 4th degree.  Item 4-2, p. 5.  He was sentenced to a term

of imprisonment of 2 to 4 years.  Item 4-1, ¶ 6(e).  His appeal from this conviction was denied by the Appellate Division, Second Department, by Decision and Order dated March 6, 2013.  *People v. Mohamed*, 960 N.Y.S.2d 319 (App. Div. 2d Dep't 2013).

On May 9, 2012, while petitioner was still in NYSDOCCS' custody, Immigration Judge Roger F. Sagerman issued a detailed decision denying petitioner's request for cancellation of removal and ordering him removed from the United States to Guyana based upon the charge in the NTA.  Item 4-2, pp. 16-24.  Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"), and on August 13, 2012, the BIA dismissed the appeal.  *Id.* at 5, 12-15.

Meanwhile, on June 19, 2012, upon release from NYSDOCCS' custody, and petitioner was returned to the custody of DHS pending execution of the final order of removal.  Item 4-1, ¶¶ 11, 12; *see* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon BIA's dismissal of appeal).

On August 15, 2012 (immediately following the BIA's ruling), DHS sent a presentation packet to the Embassy of Guyana ("Embassy") in Washington, D.C., requesting that they issue travel documents to effectuate petitioner's removal.  *Id* at ¶ 13. On August 24, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), with instructions for required action within 30 days to assist in the procurement of the travel documents.  *Id* at ¶ 14.  The form also advised petitioner of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that pursuant to INA § 241(a)(1)(C), failure to comply or provide sufficient evidence of his inability to comply may result in the

extension of the removal period and subject him to further detention. *Id*. DHS also made several attempts during August and September 2012 to contact Embassy officials regarding the request for travel documents for petitioner. *Id.* at ¶ 16.

On September 7, 2012, petitioner filed in the United States Court of Appeals for the Second Circuit a petition for review of the BIA's August 13, 2012 order, accompanied by a request for a stay of removal. *See* Item 4-2, pp. 33-35 (Docket Sheet, *Mohamed v. Holder*, 2d Cir. Docket No. 12-3550). On March 20, 2013, the Second Circuit denied petitioner's motion for stay of removal and dismissed the petition for review. *Id.* at 36-37.

On November 9, 2012, petitioner was served with a written notice of decision from the Buffalo Field Office of DHS' Enforcement and Removal Operations stating that DHS had conducted a review of petitioner's custody status and had decided to continue his detention, based upon the totality of available information which indicated that petitioner would be a threat to the community and a flight risk if he were to be released from custody. Item 4-2, pp. 4-7. An additional review of petitioner's custody status was conducted by DHS Headquarters Custody Management Unit ("HQCMU"), including an in-person interview of petitioner by a panel was convened on January 31, 2013, at the Buffalo Federal Detention Facility in Batavia, New York. Item 4-1, ¶ 19. On February 14, 2013, petitioner was served with written notice that DHS had again determined to continue his detention in DHS custody. Item 4-2, pp. 2-3.

Petitioner filed this action on February 21, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States

Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' "  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

(i)  The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of certain criminal aliens–*i.e.*, aliens ordered removed due to conviction of an enumerated crime–beyond the expiration of the ninety-day removal period.  *See* INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."  8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on June 19, 2012, upon his release from NYSDOCCS' custody, for detention pending completion of immigration removal proceedings as authorized by INA § 236.[3]  *See* Item 4-1, ¶ 11.  This

---

[3]The present petition does not challenge detention under INA § 236 during the period prior to the final order of removal.  *See* , e.g., *Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. Nov. 3, 2011) (detention pursuant to INA § 236 during period prior to pre-final order of removal did not violate due process; citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

detention continued until August 13, 2012, when the Immigration Judge's order of removal became final upon the BIA's dismissal of petitioner's appeal. *Id.* at ¶ 12; *see* 8 C.F.R. § 1241.1(b). After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the 90-day removal period began. *Id.* As discussed, DHS then promptly took steps to obtain travel documents for petitioner, including submission of a presentation packet to the Embassy, service of Form I-229(a), and several attempts during August and September 2012 to contact Embassy officials. Item 4-1, ¶¶ 13, 16. However, on September 7, 2012, petitioner filed his petition for review of the final order of removal with the Second Circuit.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal

was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Pursuant to this policy, the removal period which began on August 12, 2012 was "effectively stayed" during the nearly 6-month period between September 7, 2012 and March 3, 2013, when the Second Circuit dismissed the petition for review. *Luna-Aponte*, 743 F. Supp. 2d at 190. Therefore, DHS had fewer than 30 days to obtain the travel documents necessary for execution of the removal order prior to the filing of the petition for circuit court review (during which time petitioner's detention was mandatory, *see* INA § 241(a)(2)), and DHS could not resume its efforts until the Second Circuit ruled. Considering forbearance, the duration of the challenged detention in this case, as of the date of this writing, is less than four months from the date the order of removal became administratively final. 8 U.S.C. § 1231(a)(1)(B)(i).

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and

administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec*., 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Furthermore, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" beyond the "presumptively reasonable" first six months of detention following his final removal order. *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Guyana in the reasonably foreseeable future. He simply alleges that the Embassy "has not issued travel documents and there is no certainty as to when, if ever, such papers will be issued." Item 1, ¶ 15. However, as discussed above, DHS records submitted in connection with the present petition indicate that, following the circuit court's

ruling, DHS promptly resumed and has continued its efforts to obtain travel documents for petitioner.  Specifically, DHS file notations reveal that, on March 27, 2013, the deportation officer assigned to petitioner's case communicated with the Embassy to advise that petitioner's request for review of his BIA appeal had been denied by the Second Circuit, and that the New York State courts have denied petitioner's direct appeals and collateral challenges to his state convictions.  *See* Item 4-1, ¶¶ 22-23.  According to an Embassy representative, Guyana will not issue a travel document for petitioner until all litigation regarding the legality of his removal–including the present habeas petition–has been exhausted.  *Id*. at ¶ 24. The request for a travel document for petitioner therefore remains pending with the Embassy, and there is nothing in the present record to suggest that the Guyanese authorities are inclined to deny the request once all of petitioner's legal challenges to his removal become final.

In addition, the statistical evidence in the records submitted to the court reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Guyana, indicating no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2009, a total of 305 aliens were repatriated to Guyana; in FY 2010, 221 aliens were repatriated to Guyana; and in FY 2011, 189 aliens were repatriated to Guyana.  *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3.  These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the government of Guyana can be accomplished within the

reasonably foreseeable future following resolution of petitioner's pending request for habeas corpus review.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶¶ 15, 28.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court=s holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant

-14-

likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   June 5, 2013
p:\pending\2013\13-185.2241.jun3.2013